## IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANITA NEIDIGH, | CASE NO. 3:13-cv-02510-GBC |
| Plaintiff, | |
| | (MAGISTRATE JUDGE COHN) |
| v. | MEMORANDUM |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | Docs. 1, 6, 7, 12, 13, 15, 16 |
| Defendant. | |

## MEMORANDUM

### I.    Procedural Background

On October 22, 2010, Anita Neidigh ("Plaintiff") filed an application for Title II Social Security Disability insurance benefits ("DIB"), with a date last insured of December 31, 2014.[1] (Administrative Transcript (hereinafter, "Tr."), 11).   Plaintiff also protectively filed a Title XVI application for supplemental security income on October 22, 2010.  (Tr. 11).   In both applications, Plaintiff

---

[1] Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes.  The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured."

alleged a disability onset date of June 3, 2010.  (Tr. 11).

After the claim was denied at the initial level of administrative review, the Administrative Law Judge ("ALJ") held a hearing on April 19, 2012.  (Tr. 22-43). On May 9, 2012, the ALJ found that Plaintiff was not disabled within the meaning of the Act.  (Tr. 8-21).  On July 3, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 7), which the Appeals Council denied on August 24, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner.  (Tr. 1-5).

On October 28, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3), to appeal a decision of the Commissioner of the Social Security Administration denying social security benefits.  (Doc. 1).  On December 18, 2013, the Commissioner ("Defendant") filed an answer and an administrative transcript of proceedings.  Doc. 6, 7.  On March 17, 2014, Plaintiff filed a brief in support of the appeal.  Doc. 12 ("Pl. Brief").  On April 16, 2014, Defendant filed a brief in response.  Doc. 11 ("Def. Brief").  On May 2, 2014, the Court referred this case to the undersigned Magistrate Judge. Both parties consented to the referral of this case to the undersigned Magistrate

Judge, and an order referring the case to the undersigned Magistrate Judge was entered on June 18, 2014.  Doc. 15, 16.

## II. Relevant Facts in the Record

Plaintiff was born on November 1, 1963, and thus was classified by the regulations as a younger person through the date of the ALJ decision rendered on May 9, 2012.  20 C.F.R. § 404.1563 (c), (Tr. 25).  Plaintiff alleges disability due to "arthritis of spine, S1 disc laying on the nerve, and epicondylitis in left arm."  (Tr. 190).  She completed ninth grade and has prior work experience as a case picker, counter helper, janitor, laborer, and waitress.  (Tr. 191).

### A.    Relevant Treatment History and Medical Opinions

### 1.  Appalachian Orthopedic Center: Dr. Thomas Green, M.D.

On May 14, 2010, Plaintiff reported pain in her back and right lower leg. (Tr. 261).   Examination results were unremarkable, and Dr. Green prescribed prednisone.  (Tr. 261).  On May 28, 2010, Plaintiff had excellent muscle power and symmetry in her calf, proximal thigh, and buttock; sitting root test was negative; and her deep tendon reflexes were equal.  (Tr. 259).  On August 16, 2010, Dr. Green completed a Medical Source Statement of Ability to Do Work-Related

Activities (Physical).   (Tr. 350, 353-55).   He opined that Plaintiff could occasionally lift twenty-five pounds, frequently lift ten pounds, stand and/or walk at least two hours in an eight-hour day, and sit for about six hours in an eight-hour day.  (Tr. 353-54).  She could occasionally climb, balance, kneel, crouch, crawl, and stoop, and she had no manipulative, visual, communicative, or environmental limitations.  (Tr. 350, 354-55).  In a treatment record dated September 28, 3010, Plaintiff reported of increased back and leg pain.  (Tr. 257).  Examination results revealed that she walked tentatively and appeared to be in pain and straight leg raising was "tight on both sides."  (Tr. 257, 316, 345).  Dr. Green concluded that Plaintiff had S1 sciatic neuropathy and referred Plaintiff to Jarrod Gipe, M.D., for a pain management consultation.  (Tr. 257).

September 15, 2009, MRI interpreted by Dr. Keith Pumroy from Walnut Bottom Radiology revealed "Negative lumbosacral spine."  (Tr. 312).  An x-ray dated September 25, 2009, was interpreted by Dr. Green who concluded, that the x-ray revealed a "Normal C-spine."   (Tr. 376).   An October 5, 2010 MRI interpreted by Dr. Pumroy at Walnut Bottom Radiology, revealed that Plaintiff's lumbar spine had a small rightward disc protrusion at L5/S1, with encroachment on

the right-sided neural foramina at that level.  (Tr. 255).  In a treatment record dated October 10, 2010, Dr. Green reinterpreted the October 5, 2010, MRI, stating "The MRI does show LS·S1 on the right, a very small hernia but it is well out lateral and it pushes on the nerve so there is a lot of recessed stenosis."  (Tr. 314).  On August 29, 2011, Dr. Green completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical).  (Tr. 428-31).  He opined that Plaintiff could occasionally lift ten pounds, frequently lift less than ten pounds, stand and/or walk for six hours in an eight-hour day, sit for less than six hours in an eight-hour day, and had limited ability to push and/or pull with her lower extremities.  (Tr. 428-29).  Plaintiff could occasionally climb, balance, kneel, crouch, crawl, and stoop, and she had no manipulative, visual, communicative, or environmental limitations. (Tr. 430-31).

### 2.  Carlisle Regional Pain Clinic: Dr. Jarrod Gipe, D.O.; Dr. Salah Eldohiri, M.D.

In a treatment record dated September 29, 2009, Dr. Green noted that Plaintiff's bilateral straight leg raise was negative.  (Tr. 372).  In October 29, 2010, Plaintiff reported pain in her lower back and hip, and numbness and tingling in her right leg.  (Tr. 244).  She reported that her pain improved with physical therapy.

(Tr. 265).  In Plaintiff's medical history, Dr. Gipe noted that Plaintiff "had an MRI of the lumbar spine, which shows a small herniated disk at L5-S1 that encroaches upon the right-sided neural foramina at that level," referencing the October 5, 2010, MRI initially taken and interpreted by Dr. Pumroy at Walnut Bottom Radiology (Tr. 255).  (Tr. 244).  Dr. Gipe prescribed medication and administered an epidural injection.  (Tr. 243, 246, 253).  In November 2010, Plaintiff reported improvement, but admitted that she used marijuana to alleviate her pain.  (Tr. 251, 263).  Dr. Gipe cautioned Plaintiff against using marijuana with opioid medication, and advised her that he would not prescribe Vicodin if she continued to use marijuana.  (Tr. 252).  An epidural injection improved her pain for a few days.  (Tr. 242, 249, 268-69).  In December 2010, Dr. Gipe administered another injection, prescribed new pain medication, and referred Plaintiff to the Hershey Spine Institute for a surgical consultation.  (Tr. 241, 267).  On January 4, 2011, Plaintiff reported a fifty percent improvement in her pain with medication.  (Tr. 449).

On January 10, 2011, Plaintiff visited the Hershey Spine Institute for a surgical consultation.  (Tr. 458-59).  Dr. Mark Knaub, M.D. noted that Plaintiff had poor range of motion in her lumbar spine, she stood on her heels and toes

without difficulty, her heel-to-toe gait and sensation were normal, clonus was negative, and she had full strength and reflexes in her lower extremities and down-going toes.  (Tr. 459).  Dr. Knaub also noted that Plaintiff's bilateral straight leg raise was negative.  (Tr. 459).  Dr. Knaub, M.D., recommended that Plaintiff undergo surgical decompression at L5-Sl to remove a small cyst and possible disc material to relieve her leg pain.  (Tr. 459).

In March 2011, Plaintiff complained of pain in her right buttocks and right knee, and reported that she wished to pursue only conservative measures of pain relief.  (Tr. 448).  In April 2011, she reported that her pain was eighty percent better, and in May 2011, Dr. Gipe opined that Plaintiff was doing fairly well on current regimen except that she reports needing to use the tramadol more for breakthrough pain.  (Tr. 440, 447).  In September 2011, Plaintiff reported that she felt "pretty good'' and she was physically active.  (Tr. 433, 444).

In October 2011, Dr. Eldohiri discharged Plaintiff from the practice due to the presence of an unauthorized drug in Plaintiff's urine as well as the absence of morphine despite patient stating that she took the prescribed medication daily.  (Tr. 437, 438).  Plaintiff continued to do well in December 2011, but reported increased

depression in February 2012 after the death of five family members in seven months.  (Tr. 461, 479).

### 3.  Sadler Health Center Corporation

In a treatment record dated August 26, 2009, Plaintiff had a negative sitting straight leg raise.  (Tr. 300).  In a treatment record dated April 7, 2010, a medical staff person[2] noted that Plaintiff had a positive straight leg raise on the right side, that palpitation caused radicular symptoms down the Plaintiff's right leg, and Plaintiff's strength was 5/5 and sensory was intact.  (Tr. 291).

### 4.  Marlene Ascione, D.O.: Statement of Ability to Do Work-Related Activities (Physical), Dated May 11, 2012

In the May 2012 assessment, Dr. Ascione check boxes indicating that Plaintiff could frequently lift up to ten pounds, occasionally lift up to twenty pounds, and never lift more than twenty pounds; occasionally carry up to twenty pounds; never carry more than twenty pounds.  (Tr. 487).  Dr. Ascione opined that, at most, Plaintiff could sit for fifteen to thirty minutes; stand for ten to fifteen

---

[2] The signatures are illegible.  It appears that a medical assistant's signature relates to the vital signs and at the bottom of the page, another provider's signature related to the examination.

minutes; and walk for ten to fifteen minutes without interruption.  (Tr. 488).  She needed to alternate between sitting, standing, and walking every two to three minutes, and she did not require a cane to walk.  (Tr. 488).  According to Dr. Ascione, Plaintiff could reach overhead and otherwise with her right hand continuously; handle, finger, feel, and push/pull with both hands continuously; and reach overhead and otherwise with her left hand frequently.  (Tr. 489).  Dr. Ascione indicated that Plaintiff could continuously operate foot controls with both feet; never climb ladders or scaffolds, and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  (Tr. 489-90).

Dr. Ascione also indicated that Plaintiff could have frequent exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, and extreme heat; occasional exposure to vibrations; no exposure to unprotected heights or moving mechanical parts; and never operate a vehicle.  (Tr. 491).  Dr. Ascione opined that Plaintiff could shop; travel without a companion; ambulate without a wheelchair, walker, two canes, or two crutches; walk a block at a reasonable pace on rough or uneven surfaces; use public transportation; climb a few steps at a reasonable pace

with a single hand rail; prepare simple meals and food; care for her personal hygiene; and sort, handle, or use paper files.  (Tr. 494).

### III.    Legal Standards and Review of ALJ Decision

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A).  A claimant for disability benefits must show that he or she has a physical or mental impairment of such a severity that:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits.  20 C.F.R. § 404.1520; *accord Plummer*, 186 F.3d at 428.  If the Commissioner finds that a Plaintiff is disabled or not

disabled at any point in the sequence, review does not proceed.   20 C.F.R. §
404.1520(a)(4).  The Commissioner must sequentially determine: (1) whether the
claimant is engaged in substantial gainful activity; (2) whether the claimant has a
severe impairment; (3) whether the claimant's impairment meets or equals a listed
impairment; (4) whether the claimant's impairment prevents the claimant from
doing past relevant work; and (5) whether the claimant's impairment prevents the
claimant from doing any other work.   20 C.F.R. §§ 404.1520, 416.920.   Before
moving on to step four in this process, the ALJ must also determine Plaintiff's
residual functional capacity ("RFC").   20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof.   The
claimant bears the burden of proof at steps one through four.   *See Mason v.
Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  If the claimant satisfies this burden,
then the Commissioner must show at step five that jobs exist in the national
economy that a person with the claimant's abilities, age, education, and work
experience can perform.  *Id.*  The ultimate burden of proving disability within the
meaning of the Act lies with the plaintiff.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R.
§ 416.912(a).

When reviewing the Commissioner's decision denying a claim for disability benefits, the Court must uphold the findings of the Commissioner so long as those findings are supported by substantial evidence. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 564 (1988) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires only 'more than a mere scintilla' of evidence, *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)), and may be less than a preponderance. *Jones*, 364 F.3d at 503. If a reasonable mind might accept the relevant evidence as adequate to support a conclusion reached by the Commissioner, then the Commissioner's determination is supported by substantial evidence. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Johnson*, 529 F.3d at 200.

### A. Omission of Medical Source Opinion

Plaintiff argues that the ALJ erred in failing to discuss the medical source opinion by Dr. Ascione.  Pl. Brief at 2, 10-11.  In the May 2012 assessment, Dr. Ascione opined that Plaintiff had limitations much for severe than those in the Dr. Green opinion credited by the ALJ.  (Tr. 487-490).  Dr. Ascione opined that, at most, Plaintiff could sit for fifteen to thirty minutes; stand for ten to fifteen minutes; and walk for ten to fifteen minutes without interruption.  (Tr. 488).  Dr. Ascione also opined that Plaintiff needed to alternate between sitting, standing, and walking every two to three minutes.  (Tr. 488).  In contrast to the ALJ's decision that Plaintiff could occasionally climb ladders (Tr. 14), Dr. Ascione indicated that Plaintiff could never climb ladders or scaffolds.  (Tr. 490).

Defendant's contention that this opinion does not need to be acknowledged is without merit. An ALJ must acknowledge treating source opinion and provide specific reasons for rejecting an opinion. SSR 96-2p (Treating source opinions "must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927"); *See also  Plummer*, 186 F.3d at 429 (An ALJ "cannot reject evidence for no reason or for the wrong reason.") (citing *Mason v. Shalala*, 994 F.2d 1058,

1066 (3d Cir.1993)).  Although Defendant presents arguments as to why no weight should be accorded to the opinion of Dr. Ascione, the Defendant's *post hoc* rationalizations are insufficient to allow meaningful judicial review.  *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) (Although a Court may "'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned,' . . . review must . . . be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action"); *Peak v. Colvin*, 1:12-CV-1224, 2014 WL 888494 at *5 (M.D. Pa. Mar. 6, 2014)( "[T]he district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.")(internal citations omitted).

Although the ALJ is not required to automatically credit Dr. Ascione's opinion, the opinion creates a probative conflict of evidence that requires acknowledgement and explanation.  *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).  The Court finds that the ALJ's improperly ignored Dr. Ascione's

opinion.  *Young v. Astrue*, 3:12-CV-1712, 2014 WL 575322 (M.D. Pa. Feb. 11, 2014) ("The administrative law judge is required to evaluate every medical opinion received.").

Based on the foregoing, the ALJ's decision is not supported by substantial evidence, thus warranting a remand.

## B.  Credibility Determination for Lay Statements

Plaintiff contends that the ALJ erred in assessing Plaintiff's credibility.  Pl. Brief at 2, 11-12.  The ALJ determined that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (Tr. 15).

Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence.  *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); accord *Snedeker v. Comm'r of Soc. Sec.*, 244 F. App'x 470, 474 (3d Cir. 2007).  An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony.  *See* SSR 96-7p; *Schaudeck v. Comm'r of Social Security*, 181 F.3d 429,

433 (3d Cir. 1999).   Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.   SSR 96-7p.   In determining a claimant's credibility regarding the severity of symptoms, the ALJ must consider the following factors in totality: (1) the extent of daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment other than medication for the symptoms; (6) measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.   SSR 96-7p; 20 C.F.R. §§ 404.1529, 416.929; *accord Canales v. Barnhart*, 308 F. Supp. 2d 523, 527 (E.D. Pa. 2004).

Given the initial step of determining the weight given to a claimant's subjective testimony when it is supported by competent medical evidence, and the fact that the ALJ omitted a medical source opinion, Plaintiff's credibility needs to

be reassessed based on all of the medical evidence.  If the ALJ finds that Plaintiff's subjective testimony is entitled great weight, then the ALJ must assess Plaintiff's credibility based on the above-enumerated factors in totality.

### C. ALJ's Assessment of Test Results

Plaintiff asserts that the Administrative Law Judge erred in failing to address what, if any, weight was given to the Plaintiff's positive straight leg raise testing on April 7, 2010, and MRI results from October 5, 2010.  Pl. Brief at 2, 4-10.

In the May 2012 decision, the ALJ noted the September 2010 treatment where Dr. Green observed Plaintiff's straight leg raising was "tight on both sides." (Tr. 15 (referring to Tr. 257, 316, 345)).  There are other references to straight leg raise tests in the record.  For instance, in a treatment record from the Sadler Heath Center dated August 26, 2009, Plaintiff had a negative sitting straight leg raise. (Tr. 300).  In a treatment record dated April 7, 2010, it was noted that Plaintiff had a positive straight leg raise on the right side.  (Tr. 291).  On January 10, 2011, Plaintiff visited the Hershey Spine Institute for a surgical consultation and Dr. Knaub noted that Plaintiff's bilateral straight leg raise was negative.  (Tr. 459).

In the May 2012 decision, the ALJ noted that "Dr. Gipe indicated that an MRI of the claimant's lumbar spine revealed a herniated disc at L5-Sl. However, the MRI report showed that the remainder of the MRI examination was otherwise unremarkable." (Tr. 15 (referencing the October 29, 2010, treatment note from Dr. Gipe at Tr. 244).   The record includes the following radiological tests: 1) a September 15, 2009, MRI interpreted by Dr. Keith Pumroy from Walnut Bottom Radiology which revealed "Negative lumbosacral spine" (Tr. 312); 2) an x-ray dated September 25, 2009, which interpreted by Dr. Green who concluded, that the x-ray revealed a "Normal C-spine" (Tr. 376); and 3) an October 5, 2010 MRI interpreted by Dr. Pumroy at Walnut Bottom Radiology, opining that Plaintiff's lumbar spine had a small rightward disc protrusion at L5/S1, with encroachment on the right-sided neural foramina at that level (Tr. 255).   The October 5, 2010, MRI was subsequently interpreted in a treatment record dated October 10, 2010, where Dr. Green stated "The MRI does show LS·S1 on the right, a very small hernia but it is well out lateral and it pushes on the nerve so there is a lot of recessed stenosis." (Tr. 314).   Then again on October 29, 2010, Dr. Gipe referenced the October 5, 2010 MRI stating that Plaintiff "had an MRI of the lumbar spine, which

shows a small herniated disk at L5-S1 that encroaches upon the right-sided neural foramina at that level." (Tr. 244).

> As the Third Circuit explained in *Fargnoli*:
>
> Although we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.

*Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).   In this instance, the ALJ mentioned Dr. Gipe's treatment record summarizing the findings of the October 5, 2010 MRI.   (Tr. 15).   Moreover, the ALJ referenced one of the straight leg test results, while omitting the positive straight leg raise testing on April 7, 2010, and the negative straight leg raise testing on January 10, 2011.   The probative weight of the omitted references to the additional straight leg tests and additional interpretations of the October 5, 2010, MRI are not apparent and would be harmless error.   However, given the above finding of a lack of substantial evidence, the ALJ should address the evidence upon remand.

///

///

## IV.     Conclusion

Based on the foregoing, the Court finds that the ALJ's decision lacks substantial evidence.   Pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is vacated, and this case is remanded for further proceedings.   An appropriate Order in accordance with this Memorandum will follow.


Dated: May 5, 2015                              _____*s/Gerald B. Cohn*_____
                                                                GERALD B. COHN
                                                    UNITED STATES MAGISTRATE JUDGE